dence shows that, owing to weather conditions, he could not see the train from inside the shanty, but, if he had remained outside, could have seen it in time to have warned the driver and prevented the collision. He had no right to use the shanty, except as he could do so consistently with his duty as watchman. It was his failure to perform this paramount duty that was the sole proximate cause of the collision. Frese v. C., B. & Q. R. R. Co., 263 U. S. 1, 44 S. Ct. 1, 68 L. Ed. 131; Davis, Agent, v. Kennedy, Adm'x, 266 U. S. 147, 45. S. Ct. 33, 69 L. Ed. 212.

Judgment affirmed.

---

## THE HURRICANE.

(Circuit Court of Appeals, Third Circuit. December 7, 1925.)

No. 3329.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Libels by the Philadelphia Ship Repair Company and others against the dredge Hurricane, whereof the Moore & McCormack Company, Inc., is claimant. Decrees for libelants (2 F.[2d] 70), and claimant appeals. Affirmed on opinion below.

Wood, Molloy & France, of New York City, and Willard M. Harris, of Philadelphia, Pa., for appellant.

Howard M. Long and Joseph W. Henderson, both of Philadelphia, Pa., for appellees.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and MORRIS, District Judge.

BUFFINGTON, Circuit Judge. In the court below the dredge Hurricane was attached and sold under admiralty process, and the fund arising was, by final decree, awarded lienors for repairs, wages, and supplies. Thereupon the owners of the dredge took this appeal, wherein they, as stated by them, raise two questions, viz.: "Whether jurisdiction can be asserted to enforce contracts relating to the dredge, where the nature of the services performed by the dredge have not been shown to be maritime in their nature, or the services rendered and supplies furnished had no immediate relation to commerce by water or to navigation;" and, sec-

ond, "whether the supply men exhausted all the sources of information reasonably open to them to find out whether the canal company," which was in possession of the dredge under an unrecorded bill of sale, "has authority to create liens against the dredge."

The proofs were voluminous, and the court below filed a comprehensive opinion, in which the evidence was discussed, the legal questions involved examined, and the grounds of its conclusions fully stated. On appeal to this court, the case was fully discussed by counsel, and considered de novo by the court, with the result that we agree with the conclusions reached by the court below. Its discussion of the law and facts is so full and satisfactory that an additional opinion by this court could only be an effort to put in different language what has already been said in the opinion of Judge Thompson.

Adopting, therefore, his opinion, in 2 F.(2d) 70, as embodying our views, we affirm the decree below on it.

---

## THE DO.

(District Court, S. D. Florida. November 21, 1925.)

No. 1715.

Customs duties ⬤⟺133—Evidence held not to warrant forfeiture of motorboat for importing intoxicating liquor without permit.

Evidence that motorboat was found tied to bank with no one aboard, and that one sack of liquor was found on board and other sacks recovered, by diving, from water near boat, *held* insufficient to warrant decree of forfeiture for importing liquors without permit, in violation of Tariff Act 1922, §§ 581, 584 (Comp. St. Ann. Supp. 1923, §§ 5841h, 5841h3).

Forfeiture Libel. Proceeding by the United States against the motorboat Do, V–678, to forfeit the vessel for violation of Tariff Act 1922, §§ 581, 584. Libel dismissed.

Francis L. Poor and R. A. Hubler, Asst. U. S. Attys., both of Jacksonville, Fla.

Bart A. Riley, of Miami, Fla., for claimant.

CALL, District Judge. In this case the libel is based on the alleged violation of two sections, 581 and 584, of the Tariff Act of 1922 (Comp. St. Ann. Supp. 1923, §§ 5841h, 5841h3), and importing certain liquors without a permit so to do.

The only evidence to support these charges is that, when boarded, the boat was

tied to the bank, no one aboard, and one sack of foreign liquor was found aboard, and some other sacks of liquor were recovered, by diving, from the water near the boat. This, it seems to me, is not sufficient proof upon which the court can predicate a decree for forfeiture or penalties.

The libel will be, therefore, dismissed.

=====

## WESTINGHOUSE ELECTRIC & MFG. CO. et al. v. ROYAL–EASTERN ELECTRICAL SUPPLY CO. et al.

(District Court, E. D. New York. November 5, 1925.)

### No. 1872.

1. **Patents ⬤⇒328—1,113,149, for wireless receiving system having feed-back to grid circuit, held infringed.**

Armstrong patent No. 1,113,149, claims 9, 15, and 16, October 6, 1914, for wireless receiving system with feed-back to grid circuit *held* infringed.

2. **Patents ⬤⇒174—Improvement patent of value construed liberally.**

Improvement patent of value should be liberally construed.

3. **Patents ⬤⇒167(1)—Not restricted to precise form shown in drawing.**

Patent should not be restricted to precise form shown in drawing.

In Equity. Patent infringement suit by the Westinghouse Electric & Manufacturing Company and another against the Royal-Eastern Electrical Supply Company and another. Decree for plaintiffs.

Charles Neave, L. F. H. Betts, and Stephen H. Philbin, all of New York City, for plaintiffs.

Cavanaugh & James, of New York City (Maxwell James, of New York City, of counsel), for defendants.

CAMPBELL, District Judge. This is a suit in equity brought by the plaintiffs against the defendants to restrain the alleged infringement of patent No. 1,113,149, issued by the United States Patent Office to Edwin H. Armstrong, for wireless receiving system, October 6, 1914. The plaintiff Westinghouse Electric & Manufacturing Company is the owner of the patent, and the plaintiff Radio Corporation of America is a licensee thereunder. The suit has been discontinued as to the defendant Royal-Eastern Electrical Supply Company.

The patent in suit was sustained as valid and of primary importance in Armstrong & Westinghouse Electric & Manufacturing Co. v. De Forest Radio Telephone & Telegraph Co., in the District Court of the Southern District of New York, 279 F. 445, which was affirmed by the Circuit Court of Appeals, Second Circuit, 280 F. 584.

The defendant Amsco Products, Inc., by answer denied the validity of the patent in suit as well as infringement.

[1] The claims of the patent relied upon in the suit at bar are Nos. 9, 15, and 16, which were among those adjudicated valid in the prior litigation, and read as follows:

"9. An audion wireless receiving system having a wing circuit interlinked with a resonant grid circuit upon which the receiving oscillations are impressed, and an inductance through which the current in the wing circuit flows, the grid circuit including connections for making effective upon that circuit the potential variations resulting from a change of current in the wing circuit."

"15. An audion wireless receiving system having a wing circuit interlinked with a resonant grid circuit upon which the received oscillations are impressed, and means supplementing the coupling of the audion to facilitate transfer of energy from the wing circuit to the grid circuit, whereby the effect upon the grid of high frequency pulsations in the wing circuit is increased.

"16. An audion wireless receiving system having a resonant wing circuit interlinked with a resonant grid circuit upon which the received oscillations are impressed, and means supplementing the coupling of the audion to facilitate transfer of energy from the wing circuit to the grid circuit, whereby the effect upon the grid of high frequency pulsations in the wing circuit is increased."

The defendant Amsco Products, Inc., make and sell radio receiving sets termed Melco-Supreme tuned radio frequency receivers, which are alleged in the bill of complaint in the action at bar to be infringements.

On the trial and in the brief submitted on behalf of the defendant, the validity of the patent in suit is admitted, but infringement thereof is strenuously denied.

The invention of the patent in suit and its object can best be described in the words of the patentee as found in the specifications: "The present invention relates to improvements in the arrangement and connections of electrical apparatus at the receiving station of a wireless system, and particular-